UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JOSEPH VERREAULT,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:21-cv-01648-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 16, 17)** |

**I.     Introduction**

Plaintiff John Joseph Verreault ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 16–18.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.     Factual and Procedural Background[2]**

On December 27, 2017 Plaintiff applied for disability insurance benefits and supplemental security income alleging a disability onset date of January 1, 2017 (which was subsequently amended to November 1, 2013). The applications were denied initially on March 13, 2018 and on reconsideration on July 25, 2018. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 1, 2020. AR 42–89. On July 16, 2020 the ALJ

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 10.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

issued a decision denying Plaintiff's application. AR 21–41. The Appeals Council denied review on May 5, 2021. AR 15–20. On November 12, 2021, Plaintiff filed a complaint in this Court.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of November 1, 2013. AR 27. At step two the ALJ found that Plaintiff had the following severe impairments: short bowel syndrome, obesity, and hypomagnesemia. AR 27. The ALJ also found at step two that Plaintiff had the following non-severe impairments: hypotension, anxiety, and depression. AR 27–28. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 28–29.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) except that he could: lift and carry 100 pounds occasionally and 50 pounds frequently;[3] sit, stand, and walk 6 out of 8 hours; would need a 10-minute break every two hours which would be accommodated by normal breaks. AR 29–34.

---

[3] Which is in fact the lift/carry requirement for *heavy* work, not medium work, though any error was harmless given the evidence discussed at section V(C) below which suggested the job in fact required only light exertional lifting as actually performed. 20 C.F.R. 416.967(d).

At step four the ALJ found that Plaintiff could perform his past relevant work in the composite jobs of floor laying and carpet laying as actually and generally performed. AR 34. Accordingly, the ALJ found that Plaintiff was not disabled at any time since his alleged disability onset date of November 1, 2013. AR 34.

## V. Issues Presented

Plaintiff asserts three claims of error: 1) that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's allegations regarding the frequency of his bowel movements; 2) that the ALJ failed to explain his departure from the state agency medical opinions; and, 3) that the ALJ improperly determined that Plaintiff can perform his past relevant work.

### A. Plaintiff's Testimony

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2.      **Analysis**

Plaintiff has a history of bowel obstruction, surgical bowel resection, ileostomy bag use, and short bowel syndrome. AR 410, 508, 512, 606, 1527, 1883. Although Plaintiff's chief complaints during the administrative proceedings included fatigue and confusion, his motion for summary judgment is centered around his need for excessive bathroom trips.

Plaintiff offered various testimony that his bowel movements ranged from 5 to 25 per day during the relevant period, testimony which will be discussed in more detail below. The ALJ acknowledged Plaintiff's testimony that he "must use the bathroom multiple times per day" (AR 30). The ALJ then summarized the objective medical evidence of record over several pages. The ALJ concluded with the common refrain that "the claimant's allegations are not fully consistent with or supported by the medical evidence," because "the vast majority of medical examinations . . . yielded essentially normal findings." AR 33–34.

As Plaintiff emphasizes, it's not clear what objective findings would have satisfied the ALJ. The allegations regarding his bowel movement frequency are not objectively verifiable in the strictest sense.  The records simply reflect what he told his providers who, in turn, made corresponding treatment decisions. These included an opioid based anti-diarrheal called Paregoric, and ultimately a medication called Gattex.   It cannot be disputed that Plaintiff has an underlying impairment that can cause excessive bowel movement frequency.  Further to the point, his ex-wife filled out a third party function report noting frequent bowel movements throughout the day and night.  AR 306–07.

The objective findings underscored by Defendant and the ALJ were largely peripheral to the issue at bar here, namely bowel movement frequency:

> For example, the ALJ noted Plaintiff's history of "bowel obstruction status post hemi colectomy, ileostomy then take down, and short gut syndrome" as well as nephrolithiasis (kidney stones) (AR 30). Plaintiff's physical examination in October 2017 was within normal limits, including normal range of motion in the upper and lower extremities. He was fully oriented with a normal mood and affect (AR 510). In September 2017, the claimant reported he was not having abdominal pain, distention, fever or chills. He was getting infusions twice a week for his chronic hypomagnesemia (AR 539). On December 12, 2017, an ultrasound of the abdomen did not reveal any abnormalities, no hydronephrosis and no shadowing calculi (AR 862). By May 2018, it was noted his weight had been stable. He noted improvement of his G.I. symptoms with medication adjustment (AR 31, citing AR 525). On May 28, 2019, the claimant presented for a 2-month follow-up. The claimant reported he was doing well with his current treatment regarding a short bowel syndrome and he was not having any issues (AR 31, citing 1791-92). At that visit, his doctor noted that Plaintiff "has had a big improvement in the amount of BMs he is having in a day" (AR 1791).

Resp. at 5, Doc. 17.

The first sentence quoted above simply recites his surgical history and resultant short bowel syndrome.  The second sentence discusses physical examination and range of motion findings which relate perhaps to orthopedic complaints, but not to his digestive condition.  Equally irrelevant was the discussion of normal orientation, mood, affect, and other components of a mental status examination which the ALJ likely cited in response to his mental health complaints.  The December

2017 abdominal ultrasound, lack of hydronephrosis, and lack of shadowing calculi relate to his kidney stones and not to bowel movement frequency.

The lack of abdominal pain and distention in September 2017 is more relevant to his digestive condition, but not specifically relevant to his alleged bowl movement frequency. It is unclear if there an association between bowel movement frequency and the presence or absence of pain and distention. The same is true of his weight stability. Symptoms and weight stability notwithstanding, he still had an objectively short bowel resulting in bowel movement frequency that increased at least to some extent during the relevant period (though, as will be discussed below, not necessarily increased to a work preclusive extent).

The ALJ then cited May 2019 records noting improved bowel movement frequency with his new medication, Gattex. AR 1791. This was the most relevant discussion and provided a clear and convincing reason to reject his testimony, at least as to the period following his transition to Gattex in 2019. Although this does not address the bulk of the relevant period, a closer review of the pertinent records (even based on Plaintiff's own summary thereof) reveals that his testimony and the medical records were not entirely in agreement:

Plaintiff argued as follows:

> The medical evidence corroborated Plaintiff's allegations that he was having frequent bowel movements. From January 2017 to October 2017, Plaintiff reported having bowel movements every 2 to 4 hours (Tr. 537, 539, 541, 543, 545, 547, 549, 556), but form January 2018 to June 2018, he reported having a bowel movement every 1 to 2 hours (Tr. 824, 827, 830, 833, 836, 1536), and in October 2018, he reported having as many as 12 to 15 bowel movements per day (Tr. 1527). In January 2019, Plaintiff reported a big improvement on a new medication, but continued to have 6 bowel movements per day (Tr. 1801).

And he offers the following summary of the pertinent testimony:

> Plaintiff testified that, during the relevant period under review, he had 10 or more bowel movements per day (Tr. 67), and during a normal workday he would need to use the bathroom 7 times for a total of 40 minutes (Tr. 67, 74). Further, Plaintiff testified that when he was taking Paregoric medication, from 2014 to 2018, he was having bowel movements as frequently as 15 to 25 times per day, and 12 to 14 bowel

> movements during the course of an 8-hour period (Tr. 77-78). Plaintiff reported that now, with use of a new medication, his bowel movements were down to 5 to 12 per day, but he might still have as many as 12 to 14 bowel movements for one week per month (Tr. 83-84).

Br. at 5, Doc. 16.

Of note at the outset, there appear to be two distinct periods at issue based on his testimony. The periods are demarcated by his January 2019 transition from Paregoric to Gattex. As to the first period while taking Paregoric from 2014 through the end of 2018, despite his contention that the records corroborate this testimony he cites no records for the first half of this period from 2014 through 2016. He then states that "[f]rom January 2017 to October 2017, Plaintiff reported having bowel movements every 2 to 4 hours (Tr. 537, 539, 541, 543, 545, 547, 549, 556)." Br. at 5. But these records does not support his testimony of 15 to 25 bowel movements per day at intervals every 45 to 75 minutes. Moreover, the bowel movement frequency identified in these records would appear to be accommodated by the normal breaks (10 minutes every 2 hours) as specified in the RFC.

Next Plaintiff states that "from January 2018 to June 2018, he reported having a bowel movement every 1 to 2 hours (Tr. 824, 827, 830, 833, 836, 1536) and in October 2018, he reported having as many as 12 to 15 bowel movements per day (Tr. 1527)." *Id.* Although this is more supportive of his testimony, it still does not fully support it. Moreover, at another point in the hearing he was asked (without any time period specified) about his bowel movement frequency during working hours and he indicated it was roughly 7 bowel movements during the hours of 8am to 4pm, and they would collectively span a total of 40 minutes of restroom time throughout the workday. AR 67. This would equate to an average of 5 to 6 minutes per bathroom trip. Thus, even if he required a 5 to 6 minute trip every 1 hour, rather than a 10 minute trip every 2 hours (normal breaks as specified in the RFC), his total bathroom time during the work day would not likely exceed normal breaks.

The ALJ's alternative hypothetical to the VE was imprecise in that he asked the VE whether 2 additional breaks of 15 minute duration (on top of the normal breaks) would be work preclusive and the VE answered in the affirmative. But there is no reason based on these identified medical records that he would need 2 additional breaks of 15 minute duration in addition to 10 minute breaks every 2 hours. Moreover, some records during the same time period indicate his bowel movements were as few as 5 per day while on Rifixamin, though they regressed upon discontinuation of that medication. AR 524–25. The ALJ did cite this record, albeit for a more generalized proposition that his GI symptoms had improved. AR 31.

Importantly, Plaintiff did not testify in so many words that his bowel movement frequency would be an unavoidable impediment to his ability to work, nor did his hearing counsel set out to establish that as a fact. Rather, Plaintiff simply described what his bowel movement frequency was a various times during the relevant period. For the period from 2014 to 2018, the testimony does not clearly establish (nor does the medical evidence support) that Plaintiff would unavoidably be in the restroom substantially more frequently, or for longer duration, than what customary workplace tolerances would permit, namely 10 minutes every 2 hours.

Moreover, the records beginning one month after he transitioned to a new medication, Gattex, in January 2019 undermine the notion that he required more than normal breaks to use the restroom. The records consistently reflect that the transition to Gattex was a success. On January 28, 2019, the record reflects he was "doing really well with his new medication" and that "he is now having 6 BMs a day which is a big improvement." AR 1801. Progress notes two months later on March 27, 2019 reflect "pt is stable on current medications. He feels good and he has no particular complaints today." AR 1794. Another two months later, progress notes on May 28, 2019 similarly reflect "pt reports he is doing really well with his current treatment. He is not having

any issues at this time. Pt seems to be absorbing well." AR 1791. Progress notes on July 29, 2019 and October 29, 2019 reflect the identical statement. AR 1784, 1787.

In short, one month after beginning Gattex Plaintiff reported substantial improvement with bowel movement frequency being reduced to 6 times per day. At four additional follow ups throughout 2019 he reported no change and was similarly positive about the impact of the medication. Moreover, his estimate of 6 times per day was not limited to an 8-hour workday. A natural inference to draw from this is that he and his physician were discussing the frequency during a 24-hour period. Moreover, there is little reason to infer that he was omitting nighttime or early morning bowel movements from his report to his physician, or that his physician limited the scope of his question to bowel movement frequency during business hours. With 6 bowel movements in a 24-hour period that would amount to one every 4 hours, which is amply accounted for by normal 10 minute breaks every 2 hours as specified in the RFC.

Based on these records there is no basis to credit Plaintiff's subsequent testimony at the April 2020 hearing that his bowel movements on Gattex ranged from 5 to 14 per day. Nor was there a basis to credit his testimony about the alleged phenomenon whereby the medication inexplicably had decreased efficacy one week out of the month like clockwork, a phenomenon he said he reported to his physicians but is absent from the records during that period. AR 83-84.

Overall, the medical records offered some support for his testimony but for only a discrete period of time during 2018 when he reported bowel movement frequency every 1 to 2 hours on several occasions (AR 827, 830, 833, 836, 1536), and reported 12 to 15 bowel movements per day on one occasion (AR 1527). Other records during the same period reflect bowel movements as few as 5 per day while on Rifaximin (AR 524–25), records the ALJ did cite albeit for the more generalized proposition that his GI symptoms improved. AR 31.

The facts of this case arguably warranted some consideration of whether Plaintiff might have been eligible for a closed period of disability following his surgical procedures, the several months thereafter of stoma bag use, the associated difficulties closing and sealing the stoma bag, and the ensuing months during which his providers struggled to manage his care before using Gattex. The Ninth Circuit has recently emphasized the importance of considering how a claimant's symptoms change over time. *See, Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021). (finding the ALJ "erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether Smith was disabled for only a qualifying, early portion of that time."). *Id.*

Here however, Plaintiff did not explicitly advocate for a closed period of disability, and doing so would have required a more thorough and persuasive parsing of the 2,000 page record (especially as to the period from 2014 to 2018 before his switch to Gattex). That is particularly true given that counsel's focus at the administrative hearing (not the same counsel representing Plaintiff here) was primarily on Plaintiff's fatigue and mental confusion, not his bowel movement frequency. *See* AR 51 (in which counsel identified fatigue, lack of endurance, and confusion as primary concerns, and bowel movement frequency "to a lesser extent.").

Finally, though the ALJ's discussion of Plaintiff's bowel movement frequency was admittedly limited, the ALJ's rejection of his testimony in general was also buttressed by his activities:

> August 2016 notes revealed the claimant was feeling better after his kidney stone surgery. He was planning on taking a road trip to Washington state. He had recently been enjoying barbecuing on his new grill (Exhibit 14F/8). He noted he enjoyed fishing and taking his boat out (Exhibit 14F/10). In September 2016, he noted plans to take a road trip to the beach from Wednesday through Friday (Exhibit 14F/13). During this time the claimant reported his desire to stop gambling several times (Exhibit 14F/20). He noted he began attending church in January 2017 (Exhibit 14F/27). Issues with gambling were noted (Exhibit 14F/29). In February 2017 the

>claimant reported he had been working and was feeling pretty good (Exhibit 14F/30). He noted he had recently split a lot of wood, was doing some gardening, and was keeping himself busy and occupied (Exhibit 14F/32).

An ALJ can rely on a claimant's daily activities as a basis for discrediting a claimant's testimony if (1) the daily activities contradict the claimant's other testimony; or (2) "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff disputes the ALJ's reliance on his activities arguing they could be paused or discontinued as needed for bathroom use which cannot be said of competitive employment. The point is well taken, as the activities quoted above do not directly contradict his testimony. Nevertheless, at least some of the identified activities (such as boating) are in tension with the notion that he is in the bathroom hourly. The ALJ was not unjustified in citing the same in support of the RFC which limited plaintiff only to normal breaks. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Thus, the ALJ committed no harmful error with respect to Plaintiff's testimony regarding the frequency of his bowel movements.

### B. The State Agency Doctors' Opinions

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2

(C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating

13

any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

On April 22, 2022, the Ninth Circuit addressed whether the specific and legitimate reasoning standard is consistent with the revised regulations, stating as follows:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

### 2. **Analysis**

The state agency disability determination service (DDS) physicians (Drs. Dale and Williams) reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. Dr. Dale opined, in relevant part, that Plaintiff "needs to be close to a toilet." AR 100. Dr. Williams opined, in relevant part, that Plaintiff "should have routine access to restroom." AR 130.

"If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Further, "[a]n ALJ may reject the opinion of nonexamining physicians so long as the ALJ references specific evidence in the medical record' that supports doing so") (internal citation omitted). *Burkett v. Saul*, 806 Fed. Appx. 509, 511 (9th Cir. Mar. 6, 2020).

Plaintiff contends the ALJ erred insofar as the ALJ purported to find these opinions "highly

persuasive," and largely incorporated the same into the RFC, yet inexplicably omitted the restrictions concerning physical proximity and routine access to the restroom. Plaintiff contends the error is harmful as the ALJ also omitted these restrictions from her hypotheticals to the VE, and that the VE's testimony therefore had no evidentiary value as the hypotheticals did not encapsulate all of Plaintiff's limitations. Br. at 8–9, Doc. 16.

Defendant counters that the RFC is an administrative finding reserved for the Commissioner, not a medical opinion, and that the RFC need not mirror any medical opinion but is formulated based on all the evidence. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. § 404.1546(c). Defendant further contends that the restrictions of proximity to a restroom and routine access thereto were sufficiently encapsulated by the RFC here which accounted for normal breaks of 10 minutes every two hours. Resp. at 8–10, Doc. 17. Plaintiff replies that those are simply normal breaks given to any employee, which in no way accommodates his increased need for bathroom breaks due to short bowel syndrome. Reply at 1–2, Doc. 18.

Starting with Dr. Williams' opinion, "routine access" is a non-specific restriction and Plaintiff posits no theory as to how the ALJ ought to have incorporated the same into the RFC,or posed it into a hypothetical to the VE in concrete terms. Second, to the extent "routine access" was intended to mean more than normal breaks of 10 minutes every 2 hours, such a restriction is not supported by the medical evidence for the same reasons explained above. Third, Plaintiff overlooks the second sentence in Dr. Williams' opinion immediately following the statement concerning "routine access." The full quote reads as follows: "should have routine access to a restroom. *Cl. could accommodate any need to use the restroom during routine breaks/lunch during 8 hour workday.*" AR 131 (emphasis added). The italicized portion strongly suggests Dr. Williams opined that normal breaks would indeed accommodate Plaintiff's need to use the restroom. Although this interpretation renders the first sentence concerning "routine access" superfluous, it is not clear how

15

else one should interpret the italicized portion of his statement.

As for Dr. Dale's restriction that Plaintiff "needs to be close to toilet," that statement is equally ambiguous as it begs an obvious question, namely: how close does he need to be? The ALJ's determination was based on a finding at step four that Plaintiff could perform past relevant work as a floor/carpet layer. There is little justification to conclude that close proximity to a toilet would be an obstacle, or how the VE's expertise would be brought to bear on the issue had the ALJ posed that restriction to the VE verbatim. There is also no evidence (testimonial or otherwise) regarding how urgently or unpredictably the need to use the restroom arises for Plaintiff such that physical proximity would be any more of an issue for him that it would be for any other employee without such an impairment. Thus, the court finds that the ALJ committed no error with respect to the opinions of Drs. Dale and Williams.

### C. Plaintiff's Ability to Meet the Functional Demands of His Past Job

#### 1. Applicable Law

A claimant is "not disabled" if she retains the residual functional capacity (RFC) to perform either (1) the actual functional demands and job duties of a particular past relevant job, or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See* SSR 82-61.

According to SSR 82-61, a composite job is one that has "significant elements of two or more occupations" and has "no counterpart in the DOT." SSR 82-61, available at 1982 WL 31387, at *2. Because a composite job does not have a DOT counterpart, a finding of non-disability at step four cannot be predicated on a finding that Plaintiff could perform past relevant composite jobs as generally performed (the second avenue identified in SSR 82-61). (POMS) DI 25005.020(B). Rather, he must be able to perform the composite work as actually performed.

#### 2. Analysis

According to the VE Plaintiff's past relevant work comprised the composite jobs of floor layer and carpet layer. AR 86. The former was at the medium exertional level as generally performed (frequently lift 25 and occasionally 50lbs) and the latter was at the heavy exertional level as generally performed (frequently lift 50 and occasionally 100 lbs). *Id.* The VE testified that a hypothetical individual with Plaintiff's exertional limitations could perform the jobs. *Id.*

Plaintiff argues that the ALJ erred, however, because his past relevant work as *actually* performed required exertional capacity even higher than heavy. In support he cites a work history report stating that he would have to lift 100 pounds or more. AR 318. He also relies on testimony at the hearing that he used to lift and carry about 200 to 250 pounds and more recently, since 2003, he was lifting and carrying 80 pounds on a regular basis. AR 56.

Defendant contends this evidence is selectively picked as there is other evidence in the record that his job never required lifting more than 10 pounds. AR 268. Defendant also cites his testimony that he was actually performing his previous job on a part-time basis as recently as a few months prior to the administrative hearing and only needed to lift or carry 15 or 20 pounds. AR 54-55, 63-64. In reply, Plaintiff simply states that he stands on the merits of his original argument.

However, the records Defendant cites have a potential alternative explanation. Plaintiff testified that more recently he was only doing odd jobs of 20 to 30 minute duration which were not strenuous. AR 55, 72. These odd jobs ostensibly required less flooring material than would be required if he was doing a full day job or multi day job. In other words, less time spent on the job and less square footage of flooring needing repaired might logically mean that less material was needed to repair it and thus less weight had to be carried overall. Then again, even when he was carrying 80 to 250 pounds of flooring material and tools earlier in his career, perhaps he always had the option to carry the material in smaller batches of 15 to 20 pounds, consistent with the maximum weight he was lifting when working part time. When he was younger and perhaps more

able bodied, maybe for efficiencies sake he simply chose to lift heavier weight than was strictly necessary. If so, then all of the evidence cited by the parties is potentially valid, and the two alternative explanations as to the weight lifting requirement of Plaintiff's part time work are not inconsistent. However, hearing counsel did not attempt to inquire further into this issue.

In any event, both parties appropriately cited records that appear to support their view, and the ALJ admittedly did not cite all relevant records on the issue or address the issue significantly. But it is clear that the record equally supports the parties' two differing conclusions as to the weight lifting requirement of his past relevant composite work as actually performed. Here, there is no basis to choose one conclusion over the other. In such instances, affirmance is the appropriate outcome. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted) (noting that if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision). The ALJ committed no error in concluding Plaintiff was capable of performing his past relevant composite work as actually performed.

## VI. Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff John Joseph Verreault.

IT IS SO ORDERED.

Dated: **December 29, 2022**          **/s/ Gary S. Austin**
                                                                     UNITED STATES MAGISTRATE JUDGE